# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| FABREEKA INTERNATIONAL HOLDINGS, INC. | ) ) ) | |
| Plaintiff, | ) ) | Case No. 15-CV-12958 |
| v. | ) ) | Hon. Gershwin A. Drain |
| ROBERT HALEY and ARMADILLO NOISE & VIBRATION LLC | ) ) ) | |
| Defendants. | | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR TEMPORARY RESTRAINING ORDER

# TABLE OF CONTENTS

**Page**

ISSUES PRESENTED ................................................................................. iii

TABLE OF MOST APPROPRIATE AND CONTROLING AUTHORITIES ...... iv

I.  INTRODUCTION ........................................................................... 1

II. STATEMENT OF RELEVANT FACTS ........................................ 2

    **A.**  The Parties ........................................................................... 2

    **B.**  The Employment Agreement And Restrictive Covenants ................... 3

    **C.**  Fabreeka's Efforts To Protect Its Confidential Information ............... 6

    **D.**  Haley's Violation Of The Michigan Uniform Trade Secret Act, Computer Fraud And Abuse Act And Employment Agreement, And Armadillo's Tortious Interference With The Employment Agreement ........................................................................... 6

    **E.**  Fabreeka's Efforts To Resolve This Matter Without Court Intervention ...................................................................... 10

III. ARGUMENT: FABREEKA IS ENTITLED TO A TEMPORARY RESTRAINING ORDER ............................................................... 11

    **A.**  Fabreeka Has A Strong Likelihood Of Success On The Merits ........ 11

        1.  The Covenants Are Reasonable And Enforceable ................... 11

        2.  Haley Violated MUTSA By Supplying Armadillo With Fabreeka's Confidential Information ...................................... 15

        3.  Armadillo Tortiously Interfered With Haley's Employment Agreement ......................................................... 18

    **B.**  Fabreeka Will Suffer Irreparable Harm Unless This Court Grants Its Request For Injunctive Relief ............................................... 19

    **C.**  The Issuance Of The Temporary Restraining Order Will Not Cause Substantial Harm to Others ...................................................... 21

    **D.**  The Public Interest Would Be Served By Issuing This Temporary Restraining Order ...................................................... 21

    **E.**  As A Matter Of Equity, This Court Should Extend Haley's Restrictive Covenants To Account For The Time During Which He Was In Violation Of The Employment Agreement ...................... 22

IV.   CONCLUSION.................................................................................................23

## <u>ISSUES PRESENTED</u>

1. Should this Court temporarily, and then preliminarily, enjoin Defendant Haley from violating the covenants set forth in his Employment Agreement with Fabreeka?

Fabreeka answers: YES.
Haley answers:
Armadillo answers:

2. Should this Court temporarily, and then preliminary, enjoin Defendant Armadillo from unjustly encouraging Haley to violate the covenants set forth in his Employment Agreement with Fabreeka?

Fabreeka answers: YES.
Haley answers:
Armadillo answers:

3. Should this Court temporarily, and then preliminarily, enjoin Defendants Haley and Armadillo from misappropriating Fabreeka's confidential information and using it to unfairly compete against Fabreeka?

Fabreeka answers: YES.
Haley answers:
Armadillo answers:

## TABLE OF MOST APPROPRIATE AND CONTROLING AUTHORITIES

**Page(s)**

**Cases**

*Babler v. Futhey*,
   618 F.3d 514 (6th Cir. 2010) ...........................................................................11

*Basicomputer Corp. v. Scott*,
   973 F.2d 507 (6th Cir. 1992) ...........................................................................20

*Coates v. Bastian Bros., Inc.*,
   276 Mich. App. 498, 741 N.W.2d 539 (2007)...................................................14

*Edwards Publications, Inc. v. Kasdorf*,
   No. 281499, 2009 WL 131636 (Mich. Ct. App. Jan. 20, 2009).........................11

*Experian Mktg. Solutions, Inc. v. Lehman*,
   No. 1:15-CV-476, 2015 WL 3796240 (W.D. Mich. June 18, 2015) .................18

*Follmer, Rudzewicz & Co., PC v. Kosco*,
   420 Mich. 394 (1984) ......................................................................................12

*Giasson Aerospace Sci., Inc. v. RCO Eng'g, Inc.*,
   680 F. Supp. 2d 830 (E.D. Mich. 2010) ...........................................................17

*Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*,
   268 Mich. App. 83 (Mich. Ct. App. 2005) ........................................................18

*JAC Enterprises of Kawkawlin, LLC v. DeHate*,
   No. 319792, 2015 WL 1651084 (Mich. Ct. App. Apr. 14, 2015).....................13

*Kelly Servs. v. Eidnes*,
   530 F. Supp. 2d 940 (E.D. Mich. 2008) ...........................................................17

*Lowry Computer Products, Inc. v. Head*,
   984 F. Supp. 1111 (E.D. Mich. 1997) ...................................................12, 13, 21

*Mike's Train House, Inc. v. Lionel, L.L.C.*,
   472 F.3d 398 (6th Cir. 2006) .....................................................................12, 17

*Nedschroef Detroit Corp. v. Bemas Enterprises LLC*,
   Civ. No. 14-10095, 2015 WL 2453511 (E.D. Mich. May 22, 2015).................16

*PrimePay, LLC v. Barnes*,
    No. 14-11838, 2015 WL 2405702 (E.D. Mich. May 20, 2015) ..................16, 17

*Radio One, Inc. v. Wooten*,
    452 F. Supp. 2d 754 (E.D. Mich. 2006) ..........................................................20

*Robert Half Int'l, Inc. v. Van Steenis*,
    784 F. Supp. 1263 (E.D. Mich. 1991) .............................................................13

*Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*,
    276 Mich. App. 146 (2007) ............................................................................12

*St. Clair Med., P.C. v. Borgiel*,
    270 Mich. App. 260 (2006) ...............................................................11, 12, 15

*Superior Consultant Co. v. Bailey*,
    No. 00-CV-73439, 2000 WL 1279161 (E.D. Mich. Aug. 22, 2000) ...........14, 22

*Superior Consultant Co. v. Walling*,
    48 F.3d 1219 (6th Cir. 1995) ..........................................................................14

*Superior Consulting Co. v. Walling*,
    851 F. Supp. 839 (E.D. Mich. 1994) ........................................................14, 21

*Victory Lane Quick Oil Change, Inc. v. Darwich*,
    799 F. Supp. 2d 730 (E.D. Mich. 2011) .........................................................20

## Statutes

Mich. Comp. Laws Ann. § 445.774a .....................................................................11

## I.    <u>INTRODUCTION</u>

This is a case about an individual who stole files from the computer system of his employer and used those files and the trade secrets they contained to improperly solicit business, in violation of federal and state laws and his Employment Agreement.

Defendant Haley worked for Fabreeka for approximately 28 years prior to his July 2014 resignation.  *See* Declaration of David Meyer at ¶ 8.  In May 2012, Haley signed an Employment Agreement which included, amongst other terms, a confidentiality provision, assignment of inventions, promise to return Company property upon termination of the employment relationship, and 12-month narrowly tailored non-competition and non-solicitation covenants.  *Id*. at ¶ 20.

Shortly after the expiration of the restrictive covenants, Fabreeka learned that, during the restricted period, Haley had been using confidential information stolen from Fabreeka's computer system and supplying that information to a competing company, Armadillo, thus enabling Armadillo to unfairly compete by undercutting Fabreeka's pricing and duplicating certain engineering and manufacturing solutions developed by Haley for Fabreeka and which remain the exclusive property of Fabreeka.  *Id.* at ¶¶ 28- 36.  Haley and Armadillo's conduct has irreparably harmed, and continues to harm, Fabreeka's business, customer good will and competitive edge.  Therefore, Fabreeka has no option but to seek a

temporary restraining order and preliminary injunction to protect its confidential information and legitimate business interests.

## II.   <u>STATEMENT OF RELEVANT FACTS</u>

### A.   <u>The Parties</u>

Plaintiff Fabreeka International Holdings, Inc. ("Fabreeka" or the "Company") manufactures shock absorption and vibration control equipment for clients around the world. *Id*. at ¶ 5. Amongst other services, Fabreeka develops and engineers solutions for unwanted vibration and shock caused by construction. Fabreeka's design capabilities include structural design and stress analysis of structures, foundation (inertia block) design including construction drawings, finite element analysis (FEA), dynamic/modal analysis, vibration measurement and analysis, and construction and project management. *Id.* at ¶ 6. This work is highly technical and customized to meet the needs of Fabareeka's customers. *Id*. at ¶ 7.

Defendant Robert Haley ("Haley") worked at Fabreeka for approximately 28 years in a variety of high level supervisory roles in sales, marketing and engineering. *Id.* at ¶ 8. He resigned from Fabreeka on July 24, 2015. *Id*. at ¶ 9. At the time of his resignation, and for approximately 8 years prior, Haley held the title of "Business Development, Sales & Marketing," which incorporated dual roles as the head of sales and head of engineering. *Id*. at ¶ 10. In this role, Haley was directly responsible for overseeing Fabreeka's sales and engineering functions on a global basis. *Id*. at ¶ 11. During his employment, as a high level employee

with expansive responsibilities, Haley had access to and did access confidential business information stored on computers servers, electronic systems and storage devices owned and maintained by Fabreeka. *Id*. at ¶ 12. As the head of sales and engineering, Haley had access to all of Fabreeka's confidential sales and manufacturing data, including but not limited to, its pricing strategies, application and manufacturing specifications and customer preferences. *Id*. at ¶ 13.

Defendant Armadillo Noise & Vibration LLC ("Armadillo US") is also a manufacturer and supplier of vibration control products and directly competes with Fabreeka on a global basis. *Id*. at ¶ 14. On information and belief, Armadillo US is a Massachusetts limited liability company. *Id*. at ¶ 15. On information and belief, Armadillo US is affiliated with Armadillo Noise & Vibration Ltd., based in West Yorkshire, United Kingdom ("Armadillo UK"). *Id*. at ¶ 16. On information and belief, both Armadillo US and Armadillo UK are owned and managed by Jonathan Shaw ("Shaw") and operate jointly as alter-egos for business purposes. *Id*. at ¶ 17. Armadillo US and Armadillo UK will be referred to herein collectively as "Armadillo."

On August 5, 2015, Haley publicly announced his acceptance of employment as President of Armadillo. *Id*. at ¶ 19.

### B.    The Employment Agreement And Restrictive Covenants

In May 2012, Haley and Fabreeka entered into an Employment Agreement

("Employment Agreement" or "Agreement"), which included certain restrictive covenants, in return for Haley's continued employment and other valuable consideration.  A copy of the Employment Agreement is attached hereto as Exhibit 1.

Per Section 5 of the Agreement, titled "Confidentiality, Non-Competition and Non-Solicitation Obligations," Haley specifically agreed to:

(a)     hold Fabreeka's Confidential Information in strict confidence and not disclose or otherwise communicate, provide or reveal in any manner whatsoever any of the Confidential Information to any person or entity without prior written consent of Fabreeka, and to use the Confidential Information for the sole and exclusive benefit of Fabreeka;

(b)     upon termination of employment, immediately return to Fabreeka and not retain any of its Confidential Information, including any originals, copies, reproductions, notes, facsimiles, samples, models and products;

(c)     refrain from performing "Related Work" (defined as job duties or functions that are the same as or substantially similar to Haley's duties with the Company during the 36 month period immediately preceding the termination of his employment with the Company) during his employment and for a period of 12 months following his termination of employment (the "Restricted Period") within any geographic area in which Haley worked, any geographic area in which Haley

had responsibility, or any geographic areas in which customers or clients services by Haley were located; and

(d)     refrain from directly or indirectly, on Haley's own behalf or in the service or behalf of others, solicit or attempt to divert or appropriate to a Competitor, any customer or prospective customer of Fabreeka with whom Haley had dealt on behalf of Fabreeka within the past 12 months during his employment and for a period of 12 months following his termination of employment (also the "Restricted Period").

Of particular importance to the instant case, Section 6 of the Employment Agreement, titled "Intangible Property," contained an assignment of inventions clause, wherein Haley specifically acknowledged that all ideas, inventions, discoveries, improvements, patents, copyrights in work of authorship, trademarks, service marks, trade names, software, programs, codes, design specifications, materials, processes, procedures and trade secrets made by Haley while employed with the Company relative to business, trade, activities, processes, products, services, developments, computer programs, research or interests resulting from or relating to the subject matter of any work Haley performed for the Company shall be the sole and exclusive property of the Company.

Haley also agreed that if he were to breach or threaten to breach the covenants set forth above, Fabreeka would be irreparably harmed such that it

- 5 -

would not be possible to calculate the full measure of Fabreeka's injury, and Fabreeka would have no equitable remedy at law.  Haley further acknowledged that Fabreeka is entitled to recover from him the reasonable costs, including attorneys' fees, incurred in pursuing legal action to enforce Sections 5 and 6 of the Agreement, should the legal action result in a money judgment, temporary restraining order, or injunction against Haley.

### C.   Fabreeka's Efforts To Protect Its Confidential Information

During all relevant times, Fabreeka has taken reasonable efforts to maintain the secrecy and confidentiality of its confidential business information so that it may maintain its competitive advantage over competitors who do not have this information.  *Id*. at ¶ 24.  In addition to requiring employees with access to confidential information to commit to confidentiality agreements, Fabreeka restricts access to its computer systems through password protection and only permits employee access to confidential and proprietary information on a "need-to-know" basis commensurate with that employee's duties and responsibilities within the Company.  *Id*. at ¶ 25.

### D.   Haley's Violation Of The Michigan Uniform Trade Secret Act, Computer Fraud And Abuse Act And Employment Agreement, And Armadillo's Tortious Interference With The Employment Agreement

On July 24, 2014, Haley resigned from his employment with Fabreeka.  *Id*. at ¶ 26.  For the first 11 months after his resignation, Fabreeka had no reason to suspect Haley was in violation of his continuing legal obligations to the Company,

as set forth above.  *Id*. at ¶ 27.  Unfortunately, this proved not to be the case.

On July 2, 2015, Fabreeka submitted a proposal to a customer located outside of the United States, a copy of which will be produced for *in camera* inspection.  *Id*. at ¶ 28.  On July 16, 2015, the customer contacted Fabreeka, expressing some confusion about Fabreeka's relationship with a competing company, Armadillo.  *Id*. at ¶ 29.  Specifically, the customer alerted Fabreeka that it had received a proposal from Armadillo so similar to Fabreeka's proposal that the customer questioned whether the two companies were related.  *Id*. at ¶ 30.  A copy of the customer's email will be produced for *in camera* inspection.  The customer subsequently provided Fabreeka with a copy of the Armadillo proposal, dated June 26, 2015, a copy of which will be produced for *in camera* inspection.  *Id*. at ¶ 31.

Upon review, Fabreeka was shocked to see the undeniable likenesses between the two proposals.  *Id*. at ¶ 32.  The text was nearly identical and both proposals contained the same three photographs used as illustrations to support their bids.  *Id*.  These photographs belong to Fabreeka and were taken in February 2012 as part of a job Fabreeka completed for another customer in Portland, Oregon.  *Id*. at ¶ 33.  In fact, Haley is pictured in the second of the photographs in both letters.  *Id*.

Moreover, Armadillo's proposal contains the identical manufacturing and design solution as in Fabreeka's proposal. This manufacturing and design solution was developed by Haley while employed with Fabreeka and, per Section 6 of the Employment Agreement, belongs exclusively to Fabreeka. *Id*. at ¶ 34.

Indeed, the only material difference between the two proposals was the pricing, as Armadillo's quote was substantially lower than Fabreeka's. *Id*. at ¶ 35. In short, Armadillo's proposal was submitted during the Restricted Period, clearly using Fabreeka's confidential information, for the purpose of undercutting Fabreeka's pricing.

Fabreeka immediately began investigating how Armadillo could have obtained its confidential and proprietary information. *Id*. at ¶ 37. Then, on or about August 5, 2015, just a few days after his restrictive covenants expired and a little over a month after Armadillo submitted its bid to the above-referenced customer using Fabreeka's confidential information, Haley publicly announced his acceptance of employment as Armadillo's President. *Id*. at ¶ 38. This was, by no means, a coincidence.

Fabreeka promptly conducted a forensic review of Haley's computer equipment, which revealed communications between Haley and Armadillo's Director, Shaw dating back to 2008. *Id*. at ¶ 39. Fabreeka also learned that, after his resignation, Haley reached out to several Fabreeka employees for the purpose

of requesting copies of Fabreeka's confidential information. *Id*. at ¶ 40. Moreover, just a few days ago, Armadillo added three new product offerings to its website: foundation isolation, PTFE expansion bearings and Teflon slide bearings, and sprung isolated dance floor pads. *Id*. at ¶ 41. Haley developed the manufacturing and engineering specifications for these products for Fabreeka and, per the assignment of inventions, the manufacturing and engineering specifications belong to Fabreeka. *Id*. at ¶ 42. Haley is again using Fabreeka's intangible property for the benefit of Armadillo.

On information and belief, Haley violated the Michigan Uniform Trade Secret Act ("MUTSA"), the Computer Fraud and Abuse Act ("CFAA"), and the terms of his Employment Agreement, including but not limited to, the confidentiality, non-competition and non-solicitation provisions described above. Specifically, Fabreeka has good reason to believe Haley misappropriated Fabreeka's confidential information, including but not limited to its engineering, proposal and pricing information and photographs, and secretly used them to aid Armadillo in unfairly competing against Fabreeka during the Restricted Period, prior to publicly announcing his employment as Armadillo's new president. Fabreeka further believes that, as President of Armadillo, Haley will continue to improperly and illegally use Fabreeka's confidential information for the benefit of Armadillo. On information and belief, Armadillo unjustly induced and encouraged

Haley to violate his continuing legal obligations to Fabreeka.

E.   **Fabreeka's Efforts To Resolve This Matter Without Court Intervention**

Upon learning of Haley's transgressions, on August 6, 2015, Fabreeka's counsel sent correspondence to Haley demanding that he refrain from performing any services on behalf of Armadillo, including but not limited to, acting as an officer, director, employee, independent contractor, or consultant; return any and all of Fabreeka's confidential and proprietary information in his possession, including but not limited to, any templates or other documents and information used for business proposals; produce any computers, computer storage equipment and electronic devices in his possession for forensic inspection; and cease and desist from any further violations of any of his obligations under the Employment Agreement. *Id.* at ¶ 47. Fabreeka's counsel sent similar correspondence to Shaw, reminding Armadillo of its own obligations with respect to Fabreeka's confidential information. *Id.* at ¶ 48.

Haley and Armadillo have refused to comply with Fabreeka's efforts to protect its confidential and proprietary information and legitimate business interests, or to engage in good faith discussions about this serious matter. *Id.* at ¶ 49. Accordingly, Fabreeka is left with no recourse but to seek redress from this Court by filing its Complaint for Injunctive and Other Relief, Motion for Temporary Restraining Order and Supporting Memorandum and Motion for

Expedited Discovery.

## III.   ARGUMENT: FABREEKA IS ENTITLED TO A TEMPORARY RESTRAINING ORDER

Fabreeka is in need of a temporary restraining order to protect its business relationships and its trade secrets and to enforce the restrictive covenants in the Agreement.  When evaluating whether or not to grant a motion for a temporary restraining order, courts in this District consider the following four factors: "(1) whether the plaintiff[s] [have] established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff[s]; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief." *Babler v. Futhey*, 618 F.3d 514, 519-20 (6th Cir. 2010).  "[W]here an employee establishes unique contacts, relationships, and goodwill through employment, it is reasonable to bar that employee, through use of a sound non-compete agreement, from using those accomplishments to the possible detriment of the past employer and for the benefit of a new employer." *Edwards Publications, Inc. v. Kasdorf*, No. 281499, 2009 WL 131636, at *5 (Mich. Ct. App. Jan. 20, 2009).  All of these factors weigh in favor of the issuance of a temporary restraining order against Haley and Armadillo.

### A.   Fabreeka Has A Strong Likelihood Of Success On The Merits
#### 1.   The Covenants Are Reasonable And Enforceable

Restrictive covenants are valid under Michigan law. Mich. Comp. Laws Ann. § 445.774a. A restrictive covenant is enforceable if it (1) protects an employer's reasonable competitive business interests; (2) is reasonable in terms of duration, geographical scope, and the type of employment or line of business; (3) is reasonable as between the parties; and (4) is not specially injurious to the public. *Id.; see also St. Clair Med., P.C. v. Borgiel*, 270 Mich. App. 260, 266 (2006). The restrictive covenants in the Agreement meet these requirements and should be enforced.

First, the restrictive covenants in the Employment Agreement were carefully drafted to give no more protection than necessary to protect Fabreeka's reasonable competitive business interests. "To be reasonable in relation to an employer's competitive business interest, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill." *St. Clair Med., P.C.*, 270 Mich. App. at 266, citing *Follmer, Rudzewicz & Co., P.C. v. Kosco*, 420 Mich. 394, 402-404 (1984). Here, the restrictive covenants were not put in place to prevent Haley from using his "general knowledge or skill;" they were put in place to prevent him from doing precisely what he has done: using Fabreeka's trade secrets, confidential and proprietary materials, and engineering, manufacturing and design solutions to covertly solicit its clients and undercut its

- 12 -

prices during the Restricted Period.  Pricing schemes, profit margins, customer preferences, and engineering and manufacturing specifications, like the ones Haley has been using to benefit Armadillo, are all protectable interests of an employer, *Lowry Computer Products, Inc. v. Head*, 984 F. Supp. 1111, 1116 (E.D. Mich. 1997); *see also Mike's Train House, Inc. v. Lionel, L.L.C.*, 472 F.3d 398, 410 (6th Cir. 2006), and under Michigan law, preventing the anticompetitive use of confidential information is a legitimate business interest.  *Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*, 276 Mich. App. 146, 158 (2007). Armadillo spent more than six years attempting to entice Haley to leave Fabreeka and come work for it.  Once Haley resigned from Fabreeka, he secretly began using the Company's confidential information for the benefit of Armadillo before announcing his employment as Armadillo's President at the end of the Restricted Period.  Fabreeka's legitimate, protectable interests are clearly being harmed.

The restrictive covenant is also reasonable in terms of duration, geographic scope and type of employment.  First, with regards to type of employment, Haley is a specialized technical employee with long experience and significant training. He operated as the head of both sales and engineering for projects in the United States and around the world.  In addition to selling Fabreeka's products, as an engineer, Haley was integrally involved in created the products Fabreeka sold.

The 12-month duration of the non-compete and non-solicitation restrictions

are well within the temporal parameters upheld by this Court. Indeed, Michigan courts have allowed for even greater time periods. *Lowry Computer Products*, 984 F. Supp. at 1116 (upholding a one year restrictive covenant). *See also JAC Enterprises of Kawkawlin, LLC v. DeHate*, No. 319792, 2015 WL 1651084, at *1 (Mich. Ct. App. Apr. 14, 2015) (upholding a five year restrictive covenant); *Robert Half Int'l, Inc. v. Van Steenis,* 784 F. Supp. 1263, 1274 (E.D. Mich. 1991) (upholding a one year restrictive covenant). Assuming Haley continued to honor his continuing confidentiality obligations to the Company, a one-year, narrowly tailored non-competition and non-solicitation covenant was abundantly reasonable.[1]

The covenants are also reasonable in geographic scope. The Agreement prevented Haley from competing "within any geographic area in which [he] worked, any geographic area over which [he] had responsibility, or any geographic area in which customers or clients serviced by [Haley] were located."[2]

Fabreeka is a global business serving customers all over the world, making geographic restrictions impractical and unnecessary in this case. An agreement

---

[1] Absent any indication that contract terms were arrived at unfairly, Michigan courts will enforce contracts between employers and employees. "That contracts are enforced according to their terms is a corollary of the parties' liberty to contract… [i]f the language of the contract is unambiguous, we construe and enforce the contract as written." *Coates v. Bastian Bros., Inc.*, 276 Mich. App. 498, 503, 741 N.W.2d 539, 543 (2007) (internal citations omitted).

without a geographic restriction is "reasonable if the employer actually has legitimate business interests throughout the world." *Superior Consulting Company, Inc. v. Walling*, 851 F. Supp. 839, 847 (E.D. Mich. 1994) appeal dismissed and remanded sub nom. *Superior Consultant Company, Inc. v. Walling*, 48 F.3d 1219 (6th Cir. 1995). *See also Superior Consultant Company, Inc. v. Bailey*, No. 00-CV-73439, 2000 WL 1279161, at *8 (E.D. Mich. Aug. 22, 2000). As evidenced by the dueling proposals for the international customer, both Fabreeka and Armadillo are competing on a global scale.

The covenants are reasonable between the parties as well. As discussed further below, while the non-compete and non-solicitation agreements may affect Haley's ability to work in this industry in a competitive capacity for a short period of time, a violation of the agreements has the potential to impact Fabreeka's business into the indefinite future.

Last, unlike non-competes involving professionals who expressly serve the public interest, such as physicians, the covenants at-issue present no harm to the public. [3]

### 2. Haley Violated MUTSA By Supplying Armadillo With Fabreeka's Confidential Information.

---

[3] Though even in the case of physicians, a reasonable non-compete may still be enforced. *St. Clair Med., P.C.*, 270 Mich. App. at 270 (noting that restrictions against competition for physicians are disfavored but upholding a non-compete agreement as reasonable).

As demonstrated by the aforementioned international customer incident, Fabreeka has good reason to believe Haley stole Fabreeka's confidential information and provided it to Armadillo, in violation of the Employment Agreement and MUTSA. Although this incident is the first time Haley was caught improperly using Fabreeka's confidential information for the benefit of a competitor, it is highly unlikely this the first time he committed such an offense while covertly working with Armadillo during the Restricted Period. Indeed, after his resignation and during the Restricted Period, Haley contacted several Fabreeka employees to ask for Fabreeka's confidential information, begging the question: if Haley was not engaging in unfair competition during the Restricted Period, then why did he want or need Fabreeka's confidential information? Fabreeka is unable to ascertain the actual volume of confidential information misappropriated by Haley and Armadillo without discovery, including a forensic review of Haley and Armadillo's computers and other electronic devices, but feels confident the above-described incident with the international customer was not the first time Haley used Fabreeka's confidential information for the benefit of Armadillo. If this Court does not enjoin Haley and Armadillo from their illegal activities, Fabreeka will continue to suffer irreparable harm to its business.

Haley's theft is sufficient to sustain a violation of MUTSA. "To succeed on a claim for misappropriation of a trade secret under Michigan law, a plaintiff must

prove: "1) the existence of a trade secret; 2) its acquisition in confidence; and 3) the defendant's unauthorized use of it." *Nedschroef Detroit Corp. v. Bemas Enterprises LLC*, Civ. No. 14-10095, 2015 WL 2453511, at \*7 (E.D. Mich. May 22, 2015). "[A] protectable trade secret under the MUTSA must be shown (1) to derive independent economic value from not being generally known, or discoverable through proper means, to others and (2) have been subject to reasonable efforts to maintain its secrecy." *PrimePay, LLC v. Barnes*, No. 14-11838, 2015 WL 2405702, at \*21 (E.D. Mich. May 20, 2015).

In addition to stealing and using Fabreeka's pricing information, proposal and photographs, Haley and Armadillo also misappropriated a specific manufacturing and design solution developed by Haley while employed with Fabreeka and, per Section 6 of the Employment Agreement, belongs exclusively to Fabreeka. The new product offerings recently added to Armadillo's website support Fabreeka's concern that Haley will continue to use its intellectual property for the benefit of Armadillo. "Knowledge developed by an employee about how to address a particular customer's peculiar needs, or having developed solutions to specialized needs, can constitute a trade secret." *PrimePay,* 2015 WL 2405702, at \*21. *See also Giasson Aerospace Sci., Inc. v. RCO Eng'g, Inc.*, 680 F. Supp. 2d 830, 842 (E.D. Mich. 2010) (Holding that engineering designs can be trade secrets). Pricing schemes, in combination with the details of customer preferences,

contracts and markups, constitute a trade secret. *Kelly Servs. v. Eidnes*, 530 F. Supp. 2d 940, 951 (E.D. Mich. 2008). Engineering and manufacturing designs developed for and by an employer are also trade secrets. *Mike's Train House,* 472 F.3d at 410. These are precisely the things Haley stole and then shared with Armadillo to bid against Fabreeka and undercut its pricing.

Since Haley acquired Fabreeka's trade secrets "in confidence" during his long-term employment with Fabreeka, all that remains is to determine whether Haley's use of the trade secrets was "unauthorized." Because Fabreeka took steps to maintain the confidentiality of the material, including the Employment Agreement provisions, restricting access to its computers through password protection and only granting its employees access to confidential information on a "need-to-know" basis, any use of this material outside the scope of Haley's employment with Fabreeka was plainly unauthorized. *See, e.g. Experian Mktg. Solutions, Inc. v. Lehman*, No. 1:15-CV-476, 2015 WL 3796240, at *11 (W.D. Mich. June 18, 2015) (holding that when employees sign confidentiality agreements to avoid disclosure, use of the information is unauthorized).

### 3.    Armadillo Tortiously Interfered With Haley's Employment Agreement

Armadillo interfered in the contractual relationship between Haley and Fabreeka. The elements of tortious interference with contractual relations include "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified

instigation of the breach by the defendant." *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 93 (Mich. Ct. App. 2005).

Inarguably, Haley and Fabreeka entered into a contract: the Employment Agreement.   Haley breached that contract by divulging and using Fabreeka's confidential information for the benefit of Armadillo and secretly competing against Fabreeka during the Restricted Period.   Fabreeka has good reason to believe that Armadillo, through Shaw, encouraged Haley to violate the terms of his Employment Agreement with Fabreeka, including but not limited to his non-competition, non-solicitation and confidentiality provisions.   This belief is substantiated by 1) the fact that the June 26, 2015 Armadillo proposal to the international customer was signed by Shaw; 2) a cursory review of Haley's Fabreeka computer showing Shaw's efforts to recruit Haley to join Armadillo dating back to 2008; and 3) Haley's attempts to acquire confidential information from his former Fabreeka co-workers during the Restricted Period.

### B.   Fabreeka Will Suffer Irreparable Harm Unless This Court Grants Its Request For Injunctive Relief

Fabreeka is in the business of selling shock absorption and vibration control equipment to clients around the world.   That business depends on development of innovative and valuable engineering solutions, competitive bidding and Fabreeka's ability to sell its products at a price driven by the marketplace.   Haley's actions have already prevented Fabreeka from doing precisely that in at least one deal (as

discussed above), and if an injunction is not issued, Haley will undoubtedly cause further irreparable harm to Fabreeka's business.

Haley is intimately familiar with all details of Fabreeka's business, engineering, manufacturing, suppliers and pricing. He has already stolen biding materials and engineering and manufacturing solutions and reproduced them, verbatim, to potential clients of Fabreeka in an attempt to win business for Armadillo during the Restricted Period. This gives Armadillo an unfair advantage in the marketplace of which it has taken full advantage, and, on information and belief, will continue to do. "The loss of fair competition and customer relationships that results from the breach of a non-compete agreement are the kinds of injuries for which monetary damages are difficult to calculate." *Victory Lane Quick Oil Change, Inc. v. Darwich*, 799 F. Supp. 2d 730, 736 (E.D. Mich. 2011) (granting a preliminary injunction to enforce a non-compete agreement).

Fabreeka already suffered a loss of goodwill in the above-described instance, where a potential international customer was understandably confused after receiving duplicative bids, in both form and substance, from Armadillo and Fabreeka and thought the two companies were likely related. "[T]he Sixth Circuit has held that "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Radio One, Inc. v. Wooten*, 452 F. Supp. 2d 754, 759 (E.D. Mich. 2006), citing

*Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992).  This confusion and loss of goodwill will increase to the detriment of Fabreeka, as Haley and Armadillo continue to use Fabreeka's confidential business information and trade secrets to obtain an unfair advantage in the marketplace in which they both compete.

**C.    The Issuance Of The Temporary Restraining Order Will Not Cause Substantial Harm to Others**

No harm to others would result from the issuance of this order.  "This factor is most commonly evaluated in terms of the balance of hardship between the parties." *Superior Consulting Co.*, 851 F. Supp. at 848.  While Haley may not be allowed to compete with his former employer for a brief period of time, pursuant to a valid agreement which he freely entered into and which was bargained for with adequate consideration, the harm to Fabreeka, should he be able to continue using their stolen confidential information, is potentially infinite.  Conversely, the harm to Haley and Armadillo is negligible.  *See id.; Lowry Computer Products*, 984 F. Supp. at 1116 (holding that if a party is using confidential information to the detriment of its former employer, the balance of harms weighs against that party). Accordingly, this factor also weighs strongly in favor of issuing injunctive relief.

**D.    The Public Interest Would Be Served By Issuing This Temporary Restraining Order**

No harm to the public would result from the issuance of a temporary restraining order against Haley and Armadillo.  In non-compete cases, "[t]he public

- 21 -

interests in protecting confidential information and in enforcing valid employment contracts" weigh in favor of granting injunctive relief. *Superior Consulting Co*, 851 F. Supp. at 848. Haley is not engaged in a profession that expressly serves the public interest, nor would the public suffer in any way through the enforcement of the Employment Agreement. Indeed, the public, as potential consumers of equipment produced and sold by Fabreeka and Armadillo, will benefit from fair competition, driven without theft of trade secrets.

    **E.**    <u>**As A Matter Of Equity, This Court Should Extend Haley's Restrictive Covenants To Account For The Time During Which He Was In Violation Of The Employment Agreement**</u>

By the terms of the Employment Agreement, Haley's non-compete and non-solicitation provisions expired on July 24, 2015 – 12 months after his resignation from Fabreeka. However, Fabreeka did not learn of Haley and Armadillo's transgressions until after expiration of the Restricted Period. Because the infringing Armadillo proposal to the international customer was submitted <u>before</u> Haley's restrictive covenants expired, and Haley misappropriated Fabreeka's confidential information and attempted to solicit other confidential information from Fabreeka employees during the Restricted Period, Haley clearly breached the agreed upon covenants in his Employment Agreement. Michigan courts have recognized that, "[a] court may, in appropriate circumstances, extend injunctive relief beyond the term of a non-competition agreement where a party has 'flouted the terms' of the agreement." *Superior Consultant Company, Inc.,* 2000 WL

1279161, at *12 (Extending injunction against competition beyond expiration of agreement because of breach) (internal citations omitted).

In this case, Haley flagrantly breached his restrictive covenants prior to their expiration, and his breach should not be excused simply because Fabreeka did not find out about the breach until after the covenants expired.  Accordingly, this Court should enjoin Haley from working for Armadillo until the conclusion of the preliminary injunction hearing.

## IV.   <u>CONCLUSION</u>

For all of the reasons discussed above, in Fabreeka's Motion for Temporary Restraining Order, and in its Complaint for Injunctive and Other Relief, this Court should grant Fabreeka's request for a temporary restraining order and other relief.

Respectfully Submitted:

DYKEMA GOSSETT PLLC

By:  */s/  James F. Hermon*
James F. Hermon
*Local Counsel for Fabreeka International Holdings, Inc.*
400 Renaissance Center
Detroit, Michigan 48243-1668
(313) 568-6540
jhermon@dykema.com

And

                        Lead Counsel
                        Mark D. Temple
                        REED SMITH LLP
                        811 Main Street #1700
                        Houston, Texas 77002
                        Phone: (713) 469-3800
                        mtemple@reedsmith.com
                        (Request for Admission Pending)

                        Hannah L. Sorcic
                        REED SMITH LLP
                        10 S. Wacker Drive, 40th Floor
                        Chicago, IL  60606
                        Phone: (312) 207-6547
                        hsorcic@reedsmith.com

Date:  August 20, 2015

## CERTIFICATE OF SERVICE

James F. Hermon states that on **August 20, 2015** he caused a copy of the foregoing **Plaintiff's Memorandum In Support Of Its Motion For Temporary Restraining Order** to be electronically filed with the Clerk of the Court through the ECF System, and served a copy of same upon Defendants by electronic mail.

*/s/  James F. Hermon*
James F. Hermon

DET01\1507372.1

- 25 -